UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


ROBIN MOORE,

                    Plaintiff,

v.                                    Case No. 3:07-cv-485-J-32MCR

JERRY CHEESEMAN,
etc.; et al.,

                    Defendants.
_____

**ORDER**

**I. Status**

    On June 4, 2007, Plaintiff Robin Moore, an inmate of the
Florida penal system proceeding *pro se* and *in forma pauperis*,
initiated this action by filing a Civil Rights Complaint Form
(hereinafter Complaint) (Doc. #1) pursuant to 42 U.S.C. § 1983.
Plaintiff names the following individuals as the Defendants in this
action: (1) Jerry Cheesman[1], a senior dentist; (2) Hiep Nguyen, the
Chief Health Officer; (3) Steven Singer, the Warden of Columbia
Correctional Institution; and (4) Jim McDonough, the former
Secretary of the Florida Department of Corrections.  Plaintiff
claims that Defendant Cheesman left painful bone and tooth
fragments in Plaintiff's wisdom tooth socket after performing a

_____

    [1] The records reflect that Defendant's name is spelled
Cheesman and will be hereinafter referred to as such.

wisdom tooth extraction, that Defendant Nguyen denied him proper medical treatment and that Defendants Singer and McDonough created the environment in which his federal constitutional rights were violated.

Before this Court is Defendants' Amended Motion for Summary Judgment (Doc. #28), filed June 4, 2008.  In support of their summary judgment motion, Defendants have submitted exhibits.[2]  Since Plaintiff is appearing *pro se*, the Court advised him of the provisions of Fed. R. Civ. P. 56 and gave him an opportunity to respond.  See Court's Order (Doc. #32), filed June 26, 2008, at 1, paragraph 2; Order of Special Appointment; Service of Process Upon Defendants; Notice to Plaintiff (Doc. #7) (setting forth the provisions of Rule 56 of the Federal Rules of Civil Procedure), filed July 24, 2007, at 4-5.  This Court granted Plaintiff additional time to respond, and Plaintiff filed his Opposition (Doc. #33).  Thus, the Amended Motion for Summary Judgment is now ripe for review.

## II.  Summary Judgment Standard

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled

---

[2] Defendants' exhibits will be hereinafter referred to as "Ex."

to judgment as a matter of law." <u>Crawford v. Carroll</u>, 529 F.3d

961, 964 (11th. Cir. 2008) (citing Fed. R. Civ. P. 56(c) and <u>Wilson</u>

<u>v. B/E/Aerospace, Inc.</u>, 376 F.3d 1079, 1085 (11th Cir. 2004)).

The parties' respective burdens and the Court's

responsibilities are outlined as follows:

> The movant bears the responsibility for
> demonstrating the basis for the summary
> judgment motion. [<u>Celotex Corp. v. Catrett</u>,
> 477 U.S. 317, 322 (1986).] A factual dispute
> alone is not enough to defeat a properly pled
> motion for summary judgment; only the
> existence of a genuine issue of material fact
> will preclude grant of summary judgment.
> <u>Anderson</u>, 477 U.S. at 247-48, 106 S.Ct. 2505
> (1986). An issue is genuine if the evidence
> is such that a reasonable jury could return a
> verdict for the nonmoving party. <u>Mize v.</u>
> <u>Jefferson City Bd. of Educ.</u>, 93 F.3d 739, 742
> (11th Cir. 1996) (citing <u>Hairston v.</u>
> <u>Gainesville Sun Publ'g Co.</u>, 9 F.3d 913, 918
> (11th Cir. 1993)). A fact is material if it
> may affect the outcome of the suit under the
> governing law. <u>Allen v. Tyson Foods, Inc.</u>,
> 121 F.3d 642, 646 (11th Cir. 1997). The
> moving party bears the initial burden of
> showing the court, by reference to materials
> on file, that there are no genuine issues of
> material fact that should be decided at trial.
> <u>Hickson Corp. v. N. Crossarm Co., Inc.</u>, 357
> F.3d 1256, 1260 (11th Cir. 2004) (citing
> <u>Anderson</u>, 477 U.S. at 248, 106 S.Ct. 2505).

> "When a moving party has discharged its
> burden, the non-moving party must then 'go
> beyond the pleadings,' and by its own
> affidavits, or by 'depositions, answers to
> interrogatories, and admissions on file,'
> designate specific facts showing that there is
> a genuine issue for trial." <u>Jeffery v.</u>
> <u>Sarasota White Sox, Inc.</u>, 64 F.3d 590, 593-94
> (11th Cir. 1995) (citing <u>Celotex</u>, 477 U.S. at
> 324, 106 S.Ct. 2548). If there is a conflict
> between the parties' allegations or evidence,

> the non-moving party's evidence is presumed to
> be true and all reasonable inferences must be
> drawn in the non-moving party's favor.  Shotz
> v. City of Plantation, Fla., 344 F.3d 1161,
> 1164 (11th Cir. 2003).

Allen v. Bd. of Pub. Educ. for Bibb County, 495 F.3d 1306, 1313-14

(11th Cir. 2007).

"It is true that on a motion for summary judgment, all

reasonable inferences must be made in favor of the non-moving

party." Cuesta v. School Bd. of Miami-Dade County, 285 F.3d 962,

970 (11th Cir. 2002) (citation omitted).  "A court need not permit

a case to go to a jury, however, when the inferences that are drawn

from the evidence, and upon which the non-movant relies, are

'implausible.'"  Id. (citations omitted).

The United States Supreme Court has explained how to determine

whether there is a genuine issue for trial.

> At the summary judgment stage, facts must
> be viewed in the light most favorable to the
> nonmoving party only if there is a "genuine"
> dispute as to those facts.  Fed. Rule Civ.
> Proc. 56(c).  As we have emphasized, "[w]hen
> the moving party has carried its burden under
> Rule 56(c), its opponent must do more than
> simply show that there is some metaphysical
> doubt as to the material facts . . . .  Where
> the record taken as a whole could not lead a
> rational trier of fact to find for the
> nonmoving party, there is no 'genuine issue
> for trial.'"  Matsushita Elec. Industrial Co.
> v. Zenith Radio Corp., 475 U.S. 574, 586-587,
> 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)
> (footnote omitted).  "[T]he mere existence of
> some alleged factual dispute between the
> parties will not defeat an otherwise properly
> supported motion for summary judgment; the
> requirement is that there be no genuine issue

of material fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

<u>Scott v. Harris</u>, 127 S.Ct. 1769, 1776 (2007).

### III. Cruel and Unusual Punishment

With regard to Plaintiff's claim of being subjected to cruel and unusual punishment in violation of the Eighth Amendment, the Eleventh Circuit has stated:

It is well established that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." <u>Estelle v. Gamble</u>, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 241 (1976) (citation and footnotes omitted). A prisoner states a valid claim, under 42 U.S.C. section 1983, "whether the indifference is manifested by prison doctors in their response to the prisoner's need . . . or by prison guards in intentionally denying or delaying access to medical care . . . or intentionally interfering with treatment once proscribed." <u>Id</u>. at 104-05, 97 S.Ct. at 291.

"To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." <u>Farrow v. West</u>, 320 F.3d 1235, 1243 (11th Cir. 2003). First, the plaintiff must prove an objectively serious medical need. <u>Id</u>. Second, the plaintiff must prove that the prison official acted with deliberate indifference to that need." <u>Id</u>.

> "A serious medical need is considered 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" <u>Id</u>. (citing <u>Hill v. Dekalb Reg'l Youth Det. Ctr.</u>, 40 F.3d 1176, 1187 (11th Cir. 1994)). In either case, "the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." <u>Id</u>. (citation and internal quotations marks omitted).

<u>Brown v. Johnson</u>, 387 F.3d 1344, 1351 (11th Cir. 2004).

With reference to the denial of medical care, the Eleventh Circuit has explained:

> In <u>Estelle v. Gamble</u>, the Supreme Court held that a prison official's "deliberate indifference to [the] serious medical needs of [a] prisoner[ ] constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment." <u>Estelle</u>, 429 U.S. at 104, 97 S.Ct. 285 (quotation marks and citation omitted); <u>see</u> <u>Campbell v. Sikes</u>, 169 F.3d 1353, 1363 (11th Cir. 1999). "However, not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.'" <u>McElligott v. Foley</u>, 182 F.3d 1248, 1254 (11th Cir. 1999) (citation omitted); <u>see</u> <u>Estelle</u>, 429 U.S. at 106, 97 S.Ct. 285 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). The inadvertent or negligent failure to provide adequate medical care "cannot be said to constitute 'an unnecessary and wanton infliction of pain.'" <u>Estelle</u>, 429 U.S. at 105-06, 97 S.Ct. 285.

<u>Farrow v. West</u>, 320 F.3d 1235, 1243 (11th Cir. 2003).

The Eleventh Circuit, when addressing a claim of deliberate indifference to a serious medical need, has succinctly captured the

state of the law with respect to what actually constitutes deliberate indifference:

> In _Estelle_, the Supreme Court established that "deliberate indifference" entails more than mere negligence. _Estelle_, 429 U.S. at 106, 97 S.Ct. 285; _Farmer_, 511 U.S. at 835, 114 S.Ct. 1970. The Supreme Court clarified the "deliberate indifference" standard in _Farmer_ by holding that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official _knows of_ and _disregards an excessive risk to inmate health or safety;_ the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." _Farmer_, 511 U.S. at 837, 114 S.Ct. 1970 (emphasis added). In interpreting _Farmer_ and _Estelle_, this Court explained in _McElligott_ that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." _McElligott_, 182 F.3d at 1255; _Taylor_, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need").

> This Court has provided guidance concerning the distinction between "deliberate indifference" and "mere negligence." For instance, we have stated that "an official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." _Lancaster v. Monroe County_, 116 F.3d 1419, 1425 (11th Cir. 1997). Alternatively, "[e]ven where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the

> delay and the nature of the medical need is
> relevant in determining what type of delay is
> constitutionally intolerable." McElligott,
> 182 F.3d at 1255.  For example, a defendant
> who delays necessary treatment for non-medical
> reasons may exhibit deliberate indifference.
> Hill, 40 F.3d at 1190 n. 26; H. C. by Hewett
> v. Jarrad, 786 F.2d 1080, 1086 (11th Cir.
> 1986) (citing Ancata v. Prison Health Servs.,
> Inc., 769 F.2d 700, 704 (11th Cir. 1985)).

Farrow, 320 F.3d at 1245-46.

## IV. Plaintiff's Complaint

Plaintiff states that, in March 2006, while an inmate at Columbia Correctional Institution, he had the wisdom tooth in his lower right jaw extracted by Defendant Cheesman, who is the senior dentist for Columbia Correctional Institution.  Complaint at 8. After the extraction, Defendant Cheesman advised Plaintiff that he would experience some swelling and pain for approximately thirty days, but he would be able to start eating that afternoon.  Id. at 8-9.  After the extraction, Plaintiff's jaw area became visibly swollen, and Plaintiff experienced physical pain on that side of his face and jaw area.  Id. at 9.

Further, Plaintiff claims that Dr. Nguyen denied him medical treatment for his jaw pain.  Id. at 8(a).  Plaintiff contends that Defendant Singer, by his continued employment of Defendants Nguyen and Cheesman, is responsible for creating an environment that exposed Plaintiff to four months of physical pain and mental anguish.  Id. at 8(b).  Plaintiff concludes that Defendant McDonough, by keeping Defendants Nguyen, Cheesman and Singer

- 8 -

employed, violated Plaintiff's right to be free from cruel and unusual punishment.  Id.

Plaintiff sought emergency medical treatment during the days, weeks and months following the extraction.  Id. at 9.  However, even after the emergency visits, Plaintiff's face and jaw were still swollen with pain.  Id.  Plaintiff utilized the administrative grievance procedures to complain about the pain and swelling and to notify the personnel that the medications were not relieving the pain.  Id.  In the responses to the grievances, Plaintiff was repeatedly told that he had an appointment to see the dental staff and that it was the responsibility of the dentist to determine the appropriate treatment regimen for the condition.  Id. at 9(a).

Four months after the initial wisdom tooth extraction, Plaintiff was seen by the dental staff at the Reception and Medical Center, and it was discovered that there were bone and tooth fragments causing the pain.  Id.  Surgery was performed, and the bone and tooth fragments were removed.  Id.  Plaintiff notes that he was unable to eat, and therefore his weight dropped from 195 pounds to 183 pounds during the four-month period from March 2006 through July 2006.  Id.  As relief, Plaintiff requests both compensatory and punitive damages for the pain and suffering he experienced during the four-month period.  Id. at 8-8(a).

## V. Law and Conclusions

### A. Deliberate Indifference

Plaintiff Robin Moore, a state prison inmate, is currently in the custody of the Florida Department of Corrections.  Defendant Dr. Jerry Cheesman was formerly the senior dentist at Columbia Correctional Institution during the relevant time period and is now employed as a dentist with Smallwood Prison Dentistry, Inc. Defendant Dr. Hiep Nguyen is the Chief Health Officer at Columbia Correctional Institution; Defendant Singer is the Warden at Columbia Correctional Institution; and Defendant McDonough is the former Secretary of the Florida Department of Corrections. Plaintiff's Complaint centers upon his allegations that the Defendants deprived him of constitutionally adequate dental and medical care between March 20, 2006, and July 6, 2006, in violation of his Eighth Amendment right to be free from cruel and unusual punishment.

The records reflect that Plaintiff Moore was received by the Florida Department of Corrections on April 4, 2005.  Ex. A.  When Plaintiff was received at Columbia Correctional Institution, on January 17, 2006, he was given the inmate dental orientation, in which he was instructed on how he could obtain routine dental care as well as urgent care through the sick call and emergency care procedures.  Ex. B, Affidavit of Dr. Jerry H. Cheesman, D.M.D. (hereinafter Cheesman's Affidavit).

On March 20, 2006, Plaintiff requested a sick call visit and was seen at the dental clinic, complaining of spontaneous pain in the lower right posterior. Id. That same day, Defendant Dr. Cheesman examined Moore and found that tooth number 32 was mesially angulated against tooth number 31. Id. Dr. Cheesman recommended extraction of tooth number 32, and Moore consented to the extraction. Id. Thus, that same day, Dr. Cheesman surgically extracted tooth number 32 and sutured the extraction site. Id. Moore was placed on Ibuprofen and Amoxicillin and was given a one-day bed rest lay-in pass. Id.

Dr. Cheesman saw Moore the following day for a post-operative exam. Id. During the examination, Dr. Cheesman found that all tissues related to the surgical site were healing normally and that the sutures were in place. Id.

On March 29, 2006, Dr. Cheesman saw Moore for a second post-operative exam, at which Dr. Cheesman removed the sutures and found that the external oral tissue was healing normally, but that Moore was feeling deep pain periodically. Id. Dr. Cheesman packed the socket area with gauze and sultan paste (also known as dry socket paste) and scheduled Moore to return in two days for removal of the packing. Id.

On March 31, 2006, Dr. Cheesman conducted a follow-up examination relating to the March 29th visit. Id. On this date, Dr. Cheesman repacked the number 32 socket with sultan paste and

gauze and rescheduled Moore to return to the clinic April 3, 2006, to have the packing removed.  Id.

On April 3, 2006, since Dr. Cheesman was out of the office for personal health reasons.  Id.  However, Dr. Cheesman saw Moore the next day, on April 4, 2006, and removed the dry socket gauze and found that all tissues were healing normally. Id.

On April 20, 2006, Moore declared a dental emergency and was seen in the dental clinic.  Id.  During the examination, Moore complained of spontaneous pain in the number 32 socket area.  Id. Dr. Cheesman took one periapical x-ray.[3]  Id.  Additionally, Dr. Cheesman examined Moore and found that the socket bone was healing normally.  Id.  Palpation of the buccal shelf indicated that there was a tender and soft tissue mass adjacent to number 32 area.  Id. Dr. Cheesman concluded that the mass was indicative of residual infection and prescribed Ibuprofen for pain and Amoxicillin for infection.  Id.  Dr. Cheesman directed Moore to return to the clinic in two weeks if any discomfort persisted.  Id.

Moore did not return in two weeks; however, he returned almost one-month later on May 18, 2006, when he submitted a sick call

---

[3] Periapical x-rays show the whole tooth from the crown to beyond the end of the root to where the tooth is anchored in the jaw.  Each periapical x-ray shows this full tooth dimension and includes all the teeth in one portion of either the upper or lower jaw.  Periapical x-rays are used to detect any abnormalities of the root structure and surrounding bone structure.  See http://my.clevelandclinic.org/services/Dental_Care.

request and was seen in the dental clinic by Dr. Morse.   Id.; Ex. C at 8.  Dr. Morse noted that the masseter muscle was tense and that the pain radiated to the temporalis.   Cheesman's Affidavit; Ex. C at 8.  The dental treatment records indicate that Dr. Morse prescribed Ibuprofen and instructed Moore to massage with warm compresses.   Id.

On June 1, 2006, Moore submitted a sick call request and was again seen in the dental clinic by Dr. Morse.   Id.  Dr. Morse noted that there had been some improvement in the masseter muscle, but that the distal bodies of the masseter were still rigid.   Id.  Dr. Morse prescribed Ibuprofen.   Id.

On June 7, 2006, Moore declared a dental emergency, and Dr. Cheesman saw him in the dental clinic.   Id.  Moore complained of ongoing pain from the posterior of the extraction site at the anterior masseter muscle attachment.   Id.  The x-ray was normal and "did not indicate any bone fragments."   Id.; Ex. C at 11.  That same day, Dr. Cheesman referred Moore to an oral surgeon at the Department of Corrections' Reception and Medical Center for further evaluation and treatment.   Cheesman's Affidavit.

On June 19, 2006, Moore submitted a sick call request, and Dr. Cheesman saw him in the dental clinic.   Id.  Dr. Cheesman examined Moore and found that the anterior border of the ramus bone was still tender to palpation.   Id.  Noting in the medical record that Moore was waiting for a consultation with an oral surgeon at the

Reception and Medical Center, Dr. Cheesman prescribed Ibuprofen for pain to make him as comfortable as possible until he could see the oral surgeon.  Id.; Ex. C at 7.

On June 29, 2006, Moore submitted a sick call request complaining of swelling in the upper right maxillary area in addition to the pain that started in the lower right area of the mandible and that radiated to the temporalis area.  Cheesman's Affidavit.  Dr. Cheesman examined Moore and found no indication of swelling.  Id.  Noting again that Moore was waiting for an appointment at the Reception and Medical Center for a consultation with the oral surgeon, Dr. Cheesman prescribed Ibuprofen for the pain.  Id.; Ex. C at 7.

On July 5, 2006, Moore submitted a sick call request, and Dr. Cheesman saw him in the dental clinic.  Cheesman's Affidavit. Moore complained again about the ongoing pain in the lower jaw, and Dr. Cheesman prescribed Ibuprofen for pain.  Id.

On July 6, 2006, Moore was seen by Dr. Battle, the oral surgeon at the Reception and Medical Center.  Id.  Dr. Battle extracted tooth number 1 and made an incision (flapped the gingiva tissue) on the extraction site for tooth number 32.  Id.; Ex. C at 6.  Dr. Battle noted that he removed a "small sequestrum" from the crest of the alveolar ridge.  Cheesman's Affidavit.

On July 11, 2006, Dr. Cheesman performed a post-operative examination on Moore and found that all tissues were healing

normally.   Id.; Ex. C at 5.   Moore did not complain again about pain from the surgical sites.   Cheesman's Affidavit.

Plaintiff Moore did not lose weight during the relevant time period (March 20, 2006, through July 6, 2006), as his weight was 195 pounds on December 14, 2005 (Ex. E at 27, 28) and merely fluctuated during the relevant time period.   Ex. D at 2-3; Ex. E. Plaintiff's contention that his weight dropped from 195 pounds to 183 pounds during the four-month period from March 20, 2006, until July 6, 2006 (see Complaint at 9(a)) is not supported by the medical records.   The medical records reflect the following weights:

| | |
|---|---|
| December 14, 2005 | 195 pounds |
| December 29, 2005 | 196 pounds |
| June 7, 2006 | 190 pounds |
| June 10, 2006 | 196 pounds |
| June 12, 2006 | 193 pounds |
| June 16, 2006 | 193 pounds |
| June 20, 2006 | 192 pounds |
| June 24, 2006 | 195 pounds |
| June 29, 2006 | 192 pounds |
| July 13, 2006 | 195 pounds |

Ex. E at 10, 12, 14, 16, 18, 20, 21, 25, 27, 28; Ex. D at 2-3.

Plaintiff, here, does not deny that Defendant Cheesman examined Plaintiff each time he reported to the dental clinic for treatment and provided medications to address the pain and swelling.   Plaintiff also does not deny that Defendant Cheesman referred him to a specialist to address the issue.   And, finally, Plaintiff does not deny that Dr. Battle, the oral surgeon, to which

Defendant Cheesman referred him, ultimately relieved the pain by extracting tooth number one.

Thus, Plaintiff claims that Defendant Cheesman violated his federal constitutional rights by leaving a small sequestrum in the extraction site of tooth number 32, which caused him pain and swelling for four months. Addressing that issue, Defendant Cheesman states:

> I am aware of Moore's allegation that his pain was attributed to sequestra (or bone fragments) that I left in his tooth socket during the March 20th extraction. Sequestra are bone particles that are still attached after extraction. Commonly, the patient's system takes care of sequestra by absorbing the particles. They are the size of dust particles and would not cause a patient pain. Moreover, a sequestrum would not cause the kind of deep and spontaneous pain that Moore presented. The sequestrum would only be felt when it was pushed upon, for example during a dental exam or when the patient himself presses upon the tissue over the sequestrum. However, Moore was not complaining about pain that was only present if the area was pressed. He was complaining about a deep pain in the muscle, which is not indicative of a sequestrum.
>
> While Dr. Battle's notes indicated that he removed a small sequestrum, Dr. Battle did not indicate that the small sequestrum was the source of Moore's pain. Removal of the small sequestrum was more palliative, as Moore's pain was caused by tooth number one, which Dr. Battle extracted. In other words, Moore's pain emanated from the masseter muscle area, which is further back from the extraction site, and that pain was referred pain from tooth number 1. Accordingly, Dr. Battle's extraction of tooth number one relieved Moore's pain.

- 16 -

Moreover, there was no indication that there were sequestra in the extraction site, as my palpation of the area indicated that Moore's pain emanated from further back from the extraction site (in the masseter muscle). In addition, the x-ray did not indicate that sequestra were present.

I am aware of Moore's allegation that his exam by the oral surgeon at R.M.C. was delayed. However, Columbia Correctional Institution and I have no control over the length of time a patient has to wait for a consultation with the oral surgeon at R.M.C. After I complete the referral form, it is out of my hands. The R.M.C. dental clinic schedules the patient, and the inmate is called out when it is time to transport him to R.M.C. I typically do not have any contact with a patient after a referral is submitted, and I usually do not even know when a referred patient is actually transported.

After referring Moore to the R.M.C. surgeon there was nothing I could do for him aside from attempt to make him as comfortable as possible. I did that by prescribing Ibuprofen for the pain.

I have not denied any necessary and available care to Moore. I have not knowingly or intentionally denied treatment to Moore, and I attempted in good faith to resolve Moore's complaints following the March 20th extraction.

Cheesman's Affidavit at 4-5.

Clearly, based on the record before this Court, Defendant Cheesman was not deliberately indifferent to Plaintiff's serious dental needs. Quite to the contrary, Defendant Cheesman attended to Plaintiff's dental needs and promptly referred him to an oral surgeon who ultimately relieved Plaintiff of his pain by extracting

tooth number one.   Upon the extraction of tooth number one, Plaintiff reported no further pain and swelling.

At most, Plaintiff has presented a claim of negligence against Defendant Cheesman, which is insufficient to support an Eighth Amendment violation.   See Wilson v. Seiter, 501 U.S. 294 (1991); Daniels v. Williams, 474 U.S. 327, 347 (1986); Davidson v. Cannon, 474 U.S. 344 (1986) (noting that the Due Process Clause is not implicated by a negligent act of an official causing an unintended loss of or injury to life, liberty, or property).

Plaintiff also contends that Defendant Dr. Nguyen denied him proper medical treatment for the pain and swelling of his right jaw.   Complaint at 8(a).   The medical records reflect that Dr. Nguyen treated Plaintiff on numerous occasions for high blood pressure and frequent headaches.   Ex. D, Affidavit of Dr. Hiep Nguyen (hereinafter Nguyen's Affidavit); Ex. E.   Plaintiff was seen for his medical complaints on December 29, 2005; June 10, 2006; June 12, 2006; June 16, 2006; June 20, 2006; June 24, 2006; June 28, 2006; June 29, 2006; and July 13, 2006.   Nguyen's Affidavit. Dr. Nguyen prescribed medications to control Plaintiff's blood pressure, ordered laboratory blood work for hypertension, including a chest x-ray, advised Plaintiff to quit smoking and changed Plaintiff's hypertension medication to better control his blood pressure.   Id.   Dr. Nguyen concluded that Plaintiff's blood

pressure continues to be monitored and addressed through medication. <u>Id</u>. In sum, Dr. Nguyen states:

> I categorically deny that I was ever deliberately indifferent to Moore's serious medical needs. I provided all of the necessary and available medical treatment that I thought, based on my professional judgment, were warranted given Moore's medical condition.

> I have no control over patient scheduling at the Reception and Medical Center ("R.M.C."). The staff at R.M.C. administer their own schedule and see their referred patients as soon as possible give their staffing resources.

<u>Id</u>.

On this record, as a matter of law, none of these actions by Defendants Cheesman and Nguyen constitute deliberate indifference to serious dental/medical needs. To the extent that Plaintiff holds Defendant Cheesman and Nguyen responsible for the thirty-day time period between the time Dr. Cheesman referred Moore to see the oral surgeon (June 7, 2006) and the date Moore was seen (July 6, 2006), there is no merit to the claim because this delay was at most caused by negligence. Additionally, during this time period, Plaintiff was able to declare a dental emergency and to submit sick call requests, which he did. And, finally, during this time frame, Plaintiff was examined and prescribed Ibuprofen for the pain while he waited to see the oral surgeon.

Any remaining negligence claims are pendent state law claims. The Court will decline to exercise supplemental jurisdiction over

these claims since no basis for original federal jurisdiction remains in this case. <u>Cook v. Sheriff of Monroe County, Florida</u>, 402 F.3d 1092, 1123 (11th Cir. 2005).

## B. Supervisory Liability

The Eleventh Circuit has recently stated:

> "Supervisory officials are not liable under section 1983 on the basis of respondeat superior or vicarious liability." <u>Belcher v. City of Foley, Ala.</u>, 30 F.3d 1390, 1396 (11th Cir. 1994) (internal quotation marks and citation omitted). "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." <u>Gonzalez</u>, 325 F.3d at 1234 (internal quotation marks and citation omitted). "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." <u>Brown v. Crawford</u>, 906 F.2d 667, 671 (11th Cir. 1990).

> "The necessary causal connection can be established 'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.'" <u>Cottone</u>, 326 F.3d at 1360 (citation omitted). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." <u>Brown</u>, 906 F.2d at 671. A plaintiff can also establish the necessary causal connection by showing "facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so," <u>Gonzalez</u>, 325 F.3d at 1235, or that a supervisor's "custom or policy . . . resulted

- 20 -

> in deliberate indifference to constitutional
> rights," <u>Rivas v. Freeman</u>, 940 F.2d 1491, 1495
> (11th Cir. 1991).

<u>Danley v. Allen</u>, 540 F.3d 1298, 1314 (11th Cir. 2008).

Here, Plaintiff contends that Defendant Singer, through the continued employment of Defendants Nguyen and Cheesman, is responsible for Plaintiff's pain and that Defendant McDonough, through the continued employment of Defendants Nguyen, Cheesman and Singer, violated Plaintiff's right to be free from cruel and unusual punishment. These supervisory claims against Defendants Singer and McDonough must fail since the record clearly reflects that Defendants Cheesman and Nguyen were not deliberately indifferent to Plaintiff's serious medical and dental needs.

### C. Eleventh Amendment Immunity

Defendants contend that they are entitled to Eleventh Amendment immunity. Thus, to the extent that Plaintiff is suing Defendants in their official capacities, they are entitled to Eleventh Amendment immunity.

It is well established that a suit against a defendant governmental officer in his official capacity is the same as a suit against the entity that employs the officer. <u>See</u> <u>McMillian v. Monroe County</u>, 520 U.S. 781, 785 n.2 (1997); <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985). In <u>Zatler v. Wainwright</u>, 802 F.2d 397, 400 (11th Cir. 1986) (per curium), the Eleventh Circuit noted:

> It is clear that Congress did not intend
> to abrogate a state's eleventh amendment

> immunity in section 1983 damage suits. <u>Quern v. Jordan</u>, 440 U.S. 332, 340-45, 99 S.Ct. 1139, 1144-45, 59 L.Ed.2d 358 (1979). Furthermore, after reviewing specific provisions of the Florida statutes, we recently concluded that Florida's limited waiver of sovereign immunity was not intended to encompass section 1983 suits for damages. <u>See</u> <u>Gamble</u>, 779 F.2d at 1513-20.

Accordingly, in <u>Zatler</u>, the court found that the Secretary of the Florida Department of Corrections was immune from suit in his official capacity. <u>Id</u>. Thus, insofar as Plaintiff seeks monetary damages from Defendants in their official capacities, the Eleventh Amendment clearly bars suit.

## D. Qualified Immunity

Defendants contend that they are entitled to qualified immunity. This Court has found that the Defendants have not violated Plaintiff's constitutional rights. Thus, "there is no need to proceed to the next step of determining if a constitutional right was clearly established." <u>Smith ex rel. Smith v. Siegelman</u>, 322 F.3d 1290, 1298 n.16 (11th Cir. 2003). It is clear that the Defendants are entitled to qualified immunity.

For the above-stated reasons, Defendants' Amended Motion for Summary Judgment will be granted, and judgment will be entered in favor of the Defendants.

Therefore, it is now

**ORDERED AND ADJUDGED**:

1.   Defendants' Amended Motion for Summary Judgment (Doc. #28) is **GRANTED.**

2.   The Clerk of Court shall enter judgment in favor of the Defendants.

3.   The Clerk of Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 30th day of December, 2008.

TIMOTHY J. CORRIGAN
United States District Judge

sc 11/4
c:
Robin Moore
Counsel of Record

- 23 -